IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

KANDY K. MECKFESSEL,          )
                              )
        Plaintiff,         )   Civil Case No. 07-6189-KI
                              )
vs.                           )   OPINION AND ORDER
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social Security, )
                              )
        Defendant.         )
_____)

    Alan Stuart Graf
    P. O. Box 98
    Summertown, TN  38483

        Attorney for Plaintiff

    Karin J. Immergut
    United States Attorney
    District of Oregon
    Britannia I. Hobbs
    Assistant United States Attorney
    1000 S. W. Third Avenue, Suite 600
    Portland, Oregon  97204
    Nancy A. Mishalanie

Page 1 - OPINION AND ORDER

Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

    Attorneys for Defendant

KING, Judge:

Plaintiff Kandy Meckfessel brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB"). Before the court is the Commissioner's Motion to Remand (#23).

## BACKGROUND

Meckfessel filed an application for DIB on November 15, 2002, alleging disability beginning July 1, 1996. Her date last insured is September 30, 2003. The application was denied initially and upon reconsideration. After a timely request for a hearing, Meckfessel, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on August 14, 2006.

On October 27, 2006, the ALJ issued a decision finding that Meckfessel was not disabled within the meaning of the Act and therefore was not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ.

## LEGAL STANDARDS

Page 2 - OPINION AND ORDER

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the

claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  Substantial evidence is such relevant evidence as a reasonable person might accept as

adequate to support a conclusion. It is more than a scintilla, but less than a preponderance, of the evidence. Id.

Even if the Commissioner's decision is supported by substantial evidence, it must be set aside if the proper legal standards were not applied in weighing the evidence and in making the decision. Id. The court must weigh both the evidence that supports and detracts from the Commissioner's decision. Id. The trier of fact, and not the reviewing court, must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. Id. at 720-21.

**FACTS**

I.  Meckfessel's History

Meckfessel was 46 years old at her date last insured, with a high school education. She complains of fibromyalgia, blindness in one eye (since childhood), pain, numbness, stiffness, migraines, dizziness, and memory loss.

Meckfessel has worked as a receptionist, hairdresser, and as a data entry clerk. She was laid off in August of 2004 when she failed to show up to work reliably and was, according to her employer, "physically unable to perform the necessary work." Tr. 150. Her former employer hired her for a short time to work as a nanny, but her employment ended when Meckfessel had a car accident in February of 2005 and could no longer pick up the child.

Plaintiff had surgery on August 23, 1999, after which she reported to her doctor that her back pain had ceased.

Plaintiff was examined by Gary Brandt, M.D., on August 22, 2000, who noted years of chronic abdominal discomfort. Dr. Brandt noted in November of 2002 that Meckfessel suffered

from "waxing and waning generalized myalgias, long standing sleep disturbance, intermittent vague dysesthesias, a history of chronic irritable bowel syndrome, and migraine headaches." Tr. 222. He referred her to James Morris, M.D., a physician with special expertise in the area.

Meckfessel was examined by Dr. Morris on April 17, 2003. Morris stated that Meckfessel had been unable to work since February 2003 "due to pain in her arms and shoulders. She has been diagnosed with Fibromyalgia since 1985, but never believed it, until she saw Dr. Brandt in February. She is now convinced." Tr. 294. Dr. Morris noted 16 of 18 tender points. He opined that plaintiff's "current condition is medically disabling. Patient has been completely disabled since February. Condition is expected to be permanent but symptoms may improve with appropriate treatment over time, and she may be able to return to work in 12 months." Tr. 298. Meckfessel continued to see Dr. Morris' staff during 2003 and the beginning of 2004.

She reported to Dr. Brandt on August 11, 2004, who noted "multiple chronic pain issues including irritable bowel syndrome, migraine headache co-existent reasonably controlled with methadone and conservative management." Tr. 340.

On January 12, 2005, Dr. Brandt opined that Meckfessel can only work two hours a day, that she suffers from chronic pain requiring frequent change in positions, she needs to lie down to relieve pain, can lift up to 10 pounds occasionally, and may be unpredictably absent. He gave an onset date of November 2002 for plaintiff's limitations.

II.     The ALJ's Decision

The ALJ concluded Meckfessel had fibromyalgia, degenerative disc disease, and blurred vision in one eye. She also suffered from non-severe depression. However, the ALJ did not find

that these impairments met or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations.

The ALJ concluded that through the date last insured, of September 30, 2003, the claimant had the residual functional capacity to perform at a light exertional level. She had no binocular vision, and was limited to occasional use of ropes, ladders, and scaffolds, and occasional stooping, crouching, and crawling.

After obtaining the testimony of a VE, the ALJ opined that plaintiff could perform her past relevant work as a data entry clerk. The ALJ also opined that plaintiff could perform other work in the national economy, including office helper, storage rental clerk, and baker helper.

## DISCUSSION

The government seeks a remand for further proceedings, conceding that the ALJ erred in evaluating the severity of plaintiff's depression, in rejecting Dr. Morris' opinion, in failing to discuss the lay witness statements, and in failing to give adequate reasons for rejecting plaintiff's statements about her impairments. Plaintiff seeks a remand for a finding of disability.

I.      Severity of Impairments

The Commissioner asserts the ALJ was required to comply with 20 C.F.R. § 404.1520a, and rate the degree of functional limitations resulting from plaintiff's depression before determining the severity of the depression. The Commissioner points to the state agency physicians who rated plaintiff's functional limitation in the "B" criteria as "mild," an evaluation to which the ALJ neglected to refer.

Plaintiff also takes issue with the ALJ's finding that she has blurred vision in one eye, claiming she is actually blind in one eye. She testified that she has "no vision" in one eye. Tr. 412. The ALJ cites no evidence to the contrary.

The ALJ's finding regarding plaintiff's severe impairments is flawed.

II.     Medical Evidence

Plaintiff argues the ALJ incorrectly evaluated the opinions of both Dr. Morris and Dr. Brandt.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it. Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

A.    <u>Dr. Morris</u>

The ALJ rejected Dr. Morris' opinion of plaintiff's disability for several reasons. Dr. Morris had seen plaintiff only once, on her initial visit to him in April of 2003, when he made his determination that she was unable to work. He concluded she was unable to work as of February 2003, two months before he examined her. The ALJ also noted that one month later and six months later, plaintiff experienced improvement in her condition. The ALJ also asserted that Dr. Morris did not give an explanation for his conclusion that plaintiff is unable to work.

The ALJ also rejected a checklist completed by Dr. Morris in July of 2006. The ALJ noted that Dr. Morris conceded his office had not seen plaintiff since April 2004 and that he was estimating her limitations. The ALJ also declined to give weight to the checklist because Dr. Morris had not tested plaintiff's limitations when he saw her in April of 2003.

During the hearing, the ALJ shared some opinions about Dr. Morris and about the chosen method of treatment. The ALJ stated several times that narcotics were an "inappropriate" treatment for fibromyalgia. Tr. 404. <u>See also</u> Tr. 405, 411. The ALJ seemed critical of Dr. Morris' practice of signing the treatment notes when a nurse treated plaintiff, suggesting that Dr. Morris "disguise[s]" the number of times he actually sees patients. Tr. 404. Finally, the ALJ noted on the record that he would give no weight to Dr. Morris' opinion because,

> [T]he way you can determine when Dr. Morris sees [a patient is that] he always signs it Dr. Morris, but if a nurse's name appears with Dr. Morris, it was the nurse that saw [the patient]. So he really saw her one time before her date last insured. He finds everyone disabled. That is standard language that is in his computer that they are disabled as of whatever date they want to tell him. He is not to find disability. That's reserved for Social Security.

Tr. 419.

Page 9 - OPINION AND ORDER

The Commissioner argues that the ALJ gave valid reasons in her opinion for rejecting Dr. Morris' opinion, but the ALJ's comments at the hearing may be perceived as a bias against Dr. Morris. Accordingly, the Commissioner suggests that the case be remanded to a different ALJ.

I agree with the Commissioner that the ALJ gave clear and convincing reasons for rejecting some of Dr. Morris' 2006 opinion of plaintiff's functional limitations. For example, Dr. Morris gives an opinion about how long plaintiff can sit, stand and walk in an eight-hour workday when he did not question plaintiff about her abilities, and did not note her limitations in his initial 2003 report or during subsequent visits. Indeed, Dr. Morris himself indicates his opinion is an estimate. On the other hand, his conclusion about plaintiff's level of pain and how often it would interfere with attention and concentration ("frequently") is well-supported by his examination of her.

As for Dr. Morris' 2003 disability opinion, I disagree with the Commissioner. Dr. Morris gave his 2003 opinion after a full examination and reported Meckfessel "presents with Fibromyalgia Syndrome by classic criteria." Tr. 297. He described her "chronic intractable pain problem" and the fact that she "has been unable to work due to the pain in her arms and shoulders." Tr. 294, 297. His conclusion that her condition is "medically disabling" is supported by his examination. The fact that he came to this conclusion on the first visit and never personally examined her again is irrelevant; he signed off on subsequent consultations, having reviewed them. Subsequent examinations by his office fully support Dr. Morris' initial opinion. Although plaintiff occasionally reported good days among the bad, symptoms of fibromyalgia wax and wane. In addition, when plaintiff ran out of methadone, the pain "returned

with a vengeance" and made her see that she "will have daily pain for the rest of her life." Tr. 323.

Plaintiff's fibromyalgia, repeatedly confirmed by trigger point testing by Dr. Morris' office and other physicians, and her reports of severe pain are scattered throughout the record. If the ALJ was unclear as to the basis of Dr. Morris' opinion, he was required to make an effort to contact him. SSR 96-5p.

I do, however, question Dr. Morris' conclusion that plaintiff was disabled upon her self-report that she has been unable to work since February 2003, two months before he examined her. Nevertheless, on the whole, the ALJ failed to give clear and convincing reasons, supported by substantial evidence in the record, to disregard Dr. Morris' opinion that plaintiff is unable to work.

      B.    Dr. Brandt

Plaintiff argues the ALJ improperly discredited Dr. Brandt's opinion that plaintiff was disabled. On January 12, 2005, Dr. Brandt opined that Meckfessel can only work two hours a day, that she suffers from chronic pain requiring frequent change in positions, she needs to lie down to relieve pain, can lift up to 10 pounds occasionally, and may be unpredictably absent. He gave an onset date of these limitations of November 2002.

The Commissioner responds that the ALJ gave sufficient reasons for disregarding Dr. Brandt's opinion. Oddly, the Commissioner recites reasons that do not appear in the ALJ's opinion, suggesting that the medical evidence supported improvement in her back pain.

The ALJ discredited Dr. Brandt's opinion because plaintiff had been diagnosed with fibromyalgia long before November 2002, and had been working during that time. The ALJ also

Page 11 - OPINION AND ORDER

noted the contradiction between Dr. Brandt's conclusion that plaintiff was functionally limited, while at the same time recommending aerobic exercise, weight loss and physical therapy. The ALJ determined there was no support in the record for the limitations Dr. Brandt imposed. Her neurological exam was normal, her gait and stature were normal, and her activity level was the same.

Plaintiff argues these reasons are insufficient, arguing that a normal neurological exam is not relevant because fibromyalgia is diagnosed with a trigger point test, and that Dr. Brandt referred plaintiff to an expert "given the chronicity and lack of response demonstrated so far." Tr. 222.

Dr. Brandt gave an onset date of plaintiff's limitations of November 2002. He recognized that others had diagnosed fibromyalgia in the "distant past," but his examination of her on November 22, 2002 supported the diagnosis of fibromyalgia and associated limitations. Id. Accordingly, it is irrelevant that she had been diagnosed with fibromyalgia before and continued to work. Dr. Brandt's opinion was about the onset date of her limitations. Additionally, his recommendation that plaintiff get exercise is not inconsistent with his conclusion that she suffers from "chronic pain [which] requires frequent position changes" or that she will experience four to eight painful episodes a month. Furthermore, the recommendation of exercise is a typical recommendation for treatment of fibromyalgia. As Dr. Morris explained, exercise should be undertaken as tolerated.

In sum, the ALJ failed to give clear and convincing reasons, supported by substantial evidence in the record, to disregard Dr. Brandt's opinion that plaintiff has the functional limitations described above.

Page 12 - OPINION AND ORDER

III.    <u>Lay Witness Testimony</u>

Plaintiff claims the ALJ failed to discuss the letter from her former employer, Jennifer Ausland, and failed to give reasons rejecting Alta Mitchell's testimony, who is plaintiff's mother, that were germane to her observations.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. A medical diagnosis, however, is beyond the competence of lay witnesses. <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001).

The Commissioner concedes the ALJ neglected to give reasons for rejecting Jennifer Ausland's observations. The Commissioner also concedes that the reason the ALJ gave for rejecting Mitchell's testimony was not germane to her observations. The ALJ implied that the observations were not consistent with the medical evidence.

Ausland wrote a letter explaining that Meckfessel was laid off from her receptionist job in August 2004 because Meckfessel "was not able to be reliable and . . . she was physically unable to perform the necessary work." Tr. 150. Ausland explained that Meckfessel worked approximately four to five months for the company, but the company was "aware of her illness and made compensation for her, allowing rest periods when needed, days off when necessary, and shortened hours as required." <u>Id.</u> Subsequently, Ausland asked plaintiff to care for Ausland's child, but that occurred only a "few times in late November and early December[]" and ended in February 2005 when plaintiff was involved in a car accident.

Page 13 - OPINION AND ORDER

Mitchell observed that she sees her daughter one to three times a week, that plaintiff never visits friends and rarely visits relatives, and that she leaves the house only occasionally. Plaintiff sends her son to do the grocery shopping. Plaintiff used to do jazzercize, walk, garden, and craft projects, but she no longer does these activities. Plaintiff attends church on Wednesday evening. Plaintiff has trouble sleeping, and takes naps during the day, and experiences pain even with medication. Mitchell described plaintiff's "inability to sustain activity for any length of time. Severe headaches and pain keep her cranky and in bed or in front of the TV most of the time. She relies on family members for much help." Tr. 121.

The Commissioner offers no reasons why the lay witness testimony would be rejected if the case were remanded. The statements are consistent with the medical record. Accordingly, I credit them as true.

IV.   Credibility Determination

The ALJ evaluated plaintiff's written statements, as opposed to her testimony, because the written statements dealt with the time prior to her date last insured. The only reason given for rejecting plaintiff's statements was that "[t]he medical evidence during the period from the alleged onset date of July 1, 1996 to the date last insured of September 30, 2003 does not support that the claimant was incapacitated to the extent that she could not perform within the residual functional capacity[.]" Tr. 20.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or

combination of impairments could reasonably be expected to produce some degree of symptom. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).

In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. Id. at 1284.

Here, plaintiff has produced evidence of impairments. "Once the claimant produces medical evidence of an underlying impairment, the government may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." Lester, 81 F.3d at 834. As a result, the ALJ failed to state clear and convincing reasons for rejecting plaintiff's statements.

The Commissioner suggests there are other reasons in the record for discrediting plaintiff's complaints. For instance, she worked after her date last insured, and maintaining employment "with a fair amount of success" shows ability to work. Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992).

I disagree with the Commissioner that Meckfessel's unsuccessful job effort in 2004 could constitute a successful period of employment. Unlike Drouin, who quit her part-time job at a fast-food restaurant after six months, and who was laid off for "industrial reasons" from her year-long photo film processing job, Meckfessel was laid off from her receptionist job because she was physically unable to do the work, even with accommodations.

The Commissioner does not give other reasons for questioning plaintiff's credibility. Accordingly, I credit her statements as true.

V.    Relief

Plaintiff requests a remand for a finding of disability, and the Commissioner requests a remand for further proceedings.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id.

As I noted above, the ALJ failed to properly evaluate the severity of plaintiff's symptoms, failed to properly discredit the two physicians who opined plaintiff suffers from functional limitations that preclude her from working, failed to adequately address the lay witness testimony, and failed to properly evaluate plaintiff's statements about her limitations. I

see no issues that need to be resolved prior to a finding of disability. It is clear from the record that the ALJ would be required to find Meckfessel disabled if all the evidence is credited. Accordingly, I remand for a finding that Meckfessel is disabled as of April 2003, the date of Dr. Morris' initial evaluation of her.

## CONCLUSION

The Commissioner's Motion to Remand (#23) is granted, and the decision of the Commissioner is reversed. The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this _____5th_____ day of September, 2008.

     /s/ Garr M. King
    Garr M. King
    United States District Judge